1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12    **JAMES HULING,**                        **1:11-cv-01797 LJO DLB**

13                      **Plaintiffs,**          **MEMORANDUM DECISION AND**
                                                 **ORDER RE MOTION TO DISMISS**
14           **v.**                              **FIRST AMENDED COMPLAINT (DOC.**
                                                 **19)**
15    **CITY OF LOS BANOS, GARY BRIZZEE, and**
      **EDDIE DOLZADELLI,**
16
                      **Defendants**
17

18

19                          I. <u>INTRODUCTION</u>

20          Plaintiff, James Huling, brings this lawsuit against the City of Los Banos ("City"), its Chief of

21   Police, Gary Brizzee, and City Police Officer Eddie Dolzadelli.  The First Amended Complaint ("FAC")

22   alleges five state law claims for: (1) invasion of privacy, (2) defamation, (3) intentional infliction of
23
     emotional distress, (4) intentional interference with advantageous relationships, and (5) negligence.  In
24
     addition, Plaintiff advances two federal civil rights claims.  FAC Doc. 18.  The Sixth Cause of Action,

25

26   brought under 42 U.S.C. §§ 1983 and 1986, alleges Defendants violated and/or conspired to violate

27   Plaintiffs' "due process right to informational privacy"; and that Defendants violated and/or conspired to

28

                                            1

"conduct a search and seizure of plaintiff's home and property without a warrant, or probable cause...." FAC at ¶¶ 47-64.  This claim also suggests that Defendants deprived Plaintiff of "equal protection of the laws...[and] of equal privileges and immunities under the laws including the use of intimidation or threat....," FAC ¶ 60, and that Defendants violated Plaintiff's "civil rights [to be free from] deprivation of life and liberty and property without due process of law... [and] to be free from interference with his zone of privacy under the First and 14th Amendments," FAC at ¶ 64.  The Seventh Cause of Action, also brought under 42 U.S.C. §§ 1983 and 1986, alleges "Supervisory Liability" as to all Defendants, asserting that the City and Chief Brizzee are liable for Dolzadelli's actions.  FAC at ¶¶ 65-69.

Defendants move to dismiss the FAC in its entirety.  Doc. 19.  Plaintiff opposes dismissal.  Doc. 23.  Defendants replied, and included in their reply a new argument that Defendants are entitled to qualified immunity.  Doc. 25.  Upon the Court's request, Plaintiff filed a sur-reply on the narrow issue of whether Defendants are entitled to qualified immunity on Plaintiff's informational privacy claim.  Docs. 26 & 28.  The motion was originally set for hearing on April 12, 2012, but the hearing was vacated and the matter submitted for decision on the papers.  Doc. 15.

## II. <u>PROCEDURAL HISTORY</u>

Plaintiff's original complaint was dismissed with leave to amend on January 25, 2012.  Doc. 16. Plaintiff's federal civil rights claims against the city were dismissed for failure to satisfy the requirements of *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978), which provides that a municipality cannot be liable under § 1983 on a *respondeat superior* theory (i.e., simply because it employs someone who deprives another of constitutional rights).  *Id*. at 4-6.  The federal civil rights claims against Defendant Brizzee were likewise dismissed because Plaintiff "[did] not allege that Defendant Brizzee undertook any specific acts that violated Plaintiff's rights [and Defendant Brizzee cannot be held vicariously liable for the acts of his subordinate." *Id*. at 6.  Likewise, Plaintiff's attempts to state a claim under 42 U.S.C. § 1981 were insufficient, because section 1981 "creates a cause of

action only for those discriminated against on account of their race or ethnicity...." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008), and "[n]othing in the complaint suggests Plaintiff was discriminated against on account of his racial or ethnic background." *Id.* at 7.  Finally, the remaining Section 1983 claims against all Defendants in their individual capacities were dismissed.  To the extent Plaintiff was attempting to bring a First Amendment claim, plaintiff failed to identify any protected speech or conduct that motivated any action by Defendant.  *Id.* at 7-8.  Plaintiff's non-specific mention of a "search" and an "illegal detention" were insufficient to state a claim under the Fourth Amendment.  *Id.* at 8.  Plaintiff's invocation of the Fourteenth Amendment failed to state a claim because "[t]he Complaint entirely fails to explain of what constitutionally protected life, liberty, or property interest Plaintiff was deprived, or what procedural protections were denied him." *Id.* at 8-9.  Finally, embedded in Plaintiff's state law claims were various references to federal and statutory regulatory provisions enacted as part of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  These references did not provide an independent basis for the assertion of federal jurisdiction, and the district court declined to assert supplemental jurisdiction over the remaining state law claims.  *Id.* at 9-12.   Plaintiff was afforded "one opportunity to amend," and was warned that "further total disregard for applicable legal standards will not be tolerated."  *Id.* at 13.

### III. <u>STANDARD OF DECISION</u>

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.*  Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  In other

words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation omitted).  Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In deciding whether to grant a motion to dismiss, a court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S. Ct. at 1950.  A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

# IV. <u>DISCUSSION</u>

**A.      <u>Timeliness of Filing Amended Complaint.</u>**

The January 24, 2012 Memorandum Decision and Order granted Defendants' motion to dismiss with leave to amend and specifically required amendment within thirty (30) days of electronic service, which was accomplished on January 25, 2012.  Doc. 16.  Accordingly, any amended complaint was due Friday, February 24, 2012.  Plaintiff did not file his FAC until Monday, February 27, 2012, one business day later.  Defendant mentions the late filing, but does not move for dismissal on this ground.  Doc. 20 at 2.  Dismissal is not warranted under such circumstances, where there has been no showing of prejudice.

**B.**   **Federal Civil Rights Claims.**

Plaintiff's Sixth Cause of Action against all Defendants is brought under 42 U.S.C., sections 1983 and 1986.   Plaintiff's Seventh Cause of Action, brought under the same statutory provisions, asserts "Supervisory Liability" as to all Defendants.

**1.**   **Plaintiff's Section 1986 Claims.**

Plaintiff invokes 42 U.S.C. § 1986 in his Sixth and Seventh Causes of Action, without providing any explanation as to how that statutory provision was violated.   Section 1986 provides a cause of action against any person who fails to prevent "any of the wrongs conspired to be done, and mentioned in [42 U.S.C.] section 1985."   42 U.S.C. § 1986.   It is well-established that one cannot state a claim under section 1986 without first stating a valid claim under section 1985.   *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).   "Section 1985 proscribes conspiracies to interfere with certain civil rights," *id.*, and is divided into three sub-sections.   Section 1985(1) proscribes conspiracies to prevent any person from "accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof...."   Section 1985(2) makes unlawful conspiracies to intimidate any party, witness, or juror from attending or testifying in any court of the United States. Neither of these sub-sections is even arguably applicable to the facts of this case.   Section 1985(3) prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws[.]"   As the Ninth Circuit succinctly explained in *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005)

> The original purpose of § 1985(3), which was passed as the Ku Klux Klan Act of 1871, was to enforce the rights of African Americans and their supporters. *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir.1992). We have extended § 1985(3) to protect non-racial groups only if "the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or ... Congress has indicated through legislation that the class require[s] special protection." *Id.*

Plaintiff has made no effort to establish that he is a member of a class deserving of suspect or quasi-suspect classification.   To the extent that the FAC suggests plaintiff suffers or suffered from a mental

5

illness, the federal courts do not treat mental illness as a suspect or quasi-suspect class. *See Heller v. Doe by Doe*, 509 U.S. 312, 321 (1993) ("We have applied rational-basis review in previous cases involving the mentally retarded and the mentally ill.").

Plaintiff has failed to state a claim under 42 U.S.C. § 1986.  Accordingly, Defendants' motion to dismiss any claim based upon Section 1986 claim is DISMISSED.  As section 1986 is the only basis for Plaintiff's allegations of a civil rights "conspiracy," any federal civil rights claims based upon the existence of such a conspiracy are likewise DISMISSED.

### 2.    Section 1983 Claims.

Plaintiff advances claims against all Defendants under 42 U.S.C. § 1983, asserting Defendants violated his rights under the First, Fourth, and Fourteenth Amendments.

### a.    First Amendment Claim.

As the January 24, 2011 Decision explained:

> In order to state a claim based upon a First Amendment violation, a plaintiff must allege specific facts suggesting:  (1) the plaintiff engaged in speech or conduct protected under the First Amendment; (2) the defendant took action against the plaintiff; and (3) the plaintiff's protected speech or conduct or the chilling of the plaintiff's speech or conduct was a substantial motivating factor for the defendant's actions.  *See Sloman v. Taslock*, 21 F.3d 1463, 1469-70 (9th Cir. 1994) (articulating the general elements of a First Amendment claim); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1071 (9th Cir. 2004) (applying the elements articulated in *Sloman* as pleading requirements).

Doc. 16 at 7-8.

The original complaint alleged:

> This is the proper venue for this action under HIPAA § 3261-262,264(a)(b)(c) 42 USC §§ 17931 through 17939; U.S. Cons. 1st. 4th and 14th Amendment in that the illegally disclosed confidential medical information of plaintiffs confinement in Los Banos Memorial Hospital to plaintiffs employer; the search without cause of plaintiffs home; the threats to plaintiffs spouse and other acts alleged herein were committed within this Court's judicial district.

Doc. 1 at ¶ 1.  The January 24, 2011 Decision granted Defendants' motion to dismiss any § 1983 claim based upon the First Amendment, reasoning:

6

1

2

3

4

5

  This is wholly insufficient under the modern pleading standard set forth in *Iqbal*, which requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  556 U.S. 662, 129 S. Ct. at 1949 (internal quotation marks omitted); *see also Moss*, 572 F.3d at 969 ("for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief"). What protected speech or conduct is alleged to have motivated any action by Defendants? This is not even hinted at in the Complaint.

6

Doc. 16 at 8.

7

8

9

10

11

  Although the FAC mentions the First Amendment in several additional places, it provides no additional factual information to support a First Amendment claim, and Plaintiff does not even attempt to oppose Defendants' renewed motion to dismiss any claim based upon the First Amendment. Defendants' motion to dismiss any First Amendment claim is GRANTED.

12

13

14

15

  Repeating an essentially identical First Amendment Claim in the FAC is in direct violation of the Court's previous warning that "further total disregard for applicable legal standards will not be tolerated."  Doc. 16 at 13.  If Plaintiff's counsel repeats this conduct, sanctions will be considered.

16

   **b.**  **Fourth Amendment Claim.**

17

18

19

  The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. Const. amend. IV.  The January 24, 2012 Memorandum Decision dismissed Plaintiff's Fourth Amendment Claim, reasoning:

20

21

22

  The Complaint mentions a "search" of Plaintiff's home in paragraphs 1, 8, 14, 20, 28, and 34, and an "illegal detention" in paragraphs 6, 8, 12, 25, and 36, but fails to provide any detail about either the search or the detention.  When did they occur?  Why were they unlawful?  These allegations again fail to satisfy *Iqbal*.

23

Doc. 16 at 8.

24

25

26

27

  The FAC again alleges a "search" of Plaintiff's home occurred, but provides no further detail on when that search took place or why it was unlawful.  Any such claims are dismissed for the reasons discussed in the January 24, 2012 memorandum decision.

28

  The FAC also mentions "restraint" and "confinement" in Paragraphs 19 and 53, which allege in

pertinent part:

> 19.  The statements that are the basis of the invasion of privacy are related to plaintiff's medical and psychiatric condition when he entered Los Banos Memorial Hospital which required that he be <u>restrained</u> to prevent his injuring himself.
>
> ***
>
> 53.  On or about January 4, 2011, plaintiff was admitted to the Los Banos Memorial Hospital because of heightened physical and psychological medical condition.  Based on City's direction to Brezzeee, implied or actually authorized under color of law Dozadelli [sic] and each conspired to and did <u>confine</u> plaintiff to Los Banos Memorial Hospital and thereafter made disclosures to plaintiff's employer about plaintiff's confinement at Los Banos Memorial Hospital.... Said defendants violated federal law under... 42 U.S.C. §§ 1983... U.S. Const 1st <u>4th</u>, 5th, 14th Amendment [sic]...."

(Emphasis added.)  Defendants argue, and this Court agrees, that the allegation in Paragraph 19 precludes any Fourth Amendment claim based upon Plaintiff's confinement at Los Banos Memorial Hospital.  Plaintiff admits he was restrained for his own safety.  The FAC contains no additional allegations explaining how any Defendant contributed to a Fourth Amendment violation.[1]  Defendants' motion to dismiss any Fourth Amendment claim is GRANTED.

### c.      Fourteenth Amendment/ Fifth Amendment Claims.

The due process clause of the Fifth Amendment that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...."  U.S. Const. amend. V.  This is made applicable to the states through the Fourteenth Amendment, which states explicitly:  "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  There are two possible forms of a Fourteenth Amendment due process claim: substantive and procedural.  To state a substantive due process claim, plaintiff must allege "a state actor deprived [him] of a constitutionally protected life, liberty, or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).  To state a claim for violation of procedural due

---

[1] Plaintiff's assertion in his opposition that the Fourth Amendment is implicated here because it applies whenever an individual has a "reasonable expectation of privacy," Doc. 23 at 4, is completely misplaced.  It is true that the Fourth Amendment only extends to situations in which an individual has a "reasonable expectation of privacy," but that is simply a necessary precondition to a Fourth Amendment violation.  In addition, there must be an unlawful search or seizure that invades the plaintiff's reasonable expectation of privacy.  Plaintiff has not alleged an unlawful search or seizure in this case.

process, plaintiff must allege: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.  *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003).

In the FAC, Plaintiff appears to be asserting a claim based upon his "due process right to informational privacy."  FAC at ¶ 53.  Specifically, Plaintiff alleges that Defendant Dolzadelli, perhaps at the direction of Defendant Brizzee and/or the City, disclosed confidential information about Plaintiff's medical condition to Plaintiff's employer, which "result[ed] in plaintiff's loss of employment; plaintiff's loss of reputation and standing in the community; subjected him to hatred, contempt and ridicule in the community and at his place of employment by reason of the said disclosures which included details of plaintiff's medical history plaintiff had a right to expect would be maintained in confidence."  FAC at ¶ 53.

Defendants failed to directly address this claim in their opening memorandum in support of their motion to dismiss.  This is understandable, given that the claim is not set forth in a separate cause of action and is instead embedded within Plaintiff's lengthy and confusing omnibus sections 1983 & 1986 claim.  Defendants do address the claim in reply, asserting (1) that the Ninth Circuit has not recognized a right to "informational privacy"; and (2) even if such a right does exist, its contours are so vague that the individual Defendants are entitled to qualified immunity.  Plaintiff was directed to and did file a sur-reply on this issue of qualified immunity.  Doc. 28.  Both of Defendants' arguments can be addressed under the qualified immunity framework.

**(1)**     **Qualified Immunity As Applied to Individual Defendants.**

The doctrine of qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Public officials are generally immune from civil liability unless

their actions violate clearly established law because "a reasonably competent public official should know the law governing his conduct."  *Id.*  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation and internal quotations omitted).

In applying the doctrine of qualified immunity, a court must decide whether the plaintiff has shown that a constitutional or statutory right has been violated and whether the right at issue was "clearly established" at the time of the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223 (2009).

The inquiry "must be undertaken in the light of the specific context of the case, not as a broad general proposition."  *Saucier*, 533 U.S. at 201.  Officials may only be held liable for violation of a right the "contours [of which are] sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right."  *Id.* at 202.  Therefore, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  *Id.*  To be clearly established, the law need not be a "precise formulation of the standard" where "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand."  *Id.*  The key inquiry in determining whether an officer has qualified immunity is whether the he or she has "fair warning" that the conduct was unconstitutional.  *Hope v. Pelzer*, 536 U.S. 730, 739–40 (2002).

### (2)   Has Plaintiff Alleged A Constitutional Violation?

Here, Plaintiff alleges that Defendant Dolzadelli disclosed confidential information about Plaintiff's medical condition to Plaintiff's employer, which "result[ed] in plaintiff's loss of employment;

plaintiff's loss of reputation and standing in the community; subjected him to hatred, contempt and ridicule in the community and at his place of employment by reason of the said disclosures which included details of plaintiff's medical history plaintiff had a right to expect would be maintained in confidence." FAC at ¶ 53. Elsewhere, Plaintiff alleges that "[t]he private facts disclosed by defendants were not a legitimate public concern, were intrusive … and did not accurately report plaintiff's medical physical and psychiatric condition." *Id.* at ¶ 23.

Determining whether the Ninth Circuit acknowledges a constitutional right to informational privacy that extends to Plaintiffs' circumstances requires a detailed examination of a number of cases, with a particular focus on *Nelson v. Nat'l Aeronautics and Space Admin.*, 530 F.3d 865, 877-78 (9th Cir. 2008), rev'd on other grounds, *Nat'l Aeronautics and Space Admin. v. Nelson*, 131 S. Ct. 746 (2011), and *Seaton v. Mayberg*, 610 F.3d 530 (9th Cir. 2010). *Nelson*, decided in 2008 on a motion for preliminary injunction, addressed whether a government employer could seek out certain personal information from an applicant for a low-security job. Specifically, the employer questioned the applicant whether he or she had, within the last year, sought treatment or counseling for drug use, and requested from the applicant's associates "any adverse information" concerning the applicant's "financial integrity," "abuse of alcohol and/or drugs," "mental or emotional stability," "general behavior or conduct," and "other matters." 520 F.3d at 871, 877-80. The Ninth Circuit articulated the applicable general rules as follows :

> We have repeatedly acknowledged that the Constitution protects an "individual interest in avoiding disclosure of personal matters." *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999). This interest covers a wide range of personal matters, including ... medical information, *Norman–Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality..... If the government's actions compel disclosure of private information, it "has the burden of showing that its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest." *Crawford*, 194 F.3d at 959 (internal quotation marks omitted). We must "balance the government's interest in having or using the information against the individual's interest in denying access," *Doe v. Att'y Gen.*, 941 F.2d 780, 796 (9th Cir. 1991), weighing, among other things:

11

"the type of [information] requested, ... the potential for harm in any subsequent nonconsensual disclosure, ... the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating towards access."

*Id*. (quoting *United States v. Westinghouse Elec. Corp*., 638 F.2d 570, 578 (3d Cir.1980)) (alteration in original).

*Nelson v. NASA*, 530 F.3d at 877-78 (emphasis added).  The Ninth Circuit then concluded that the applicant plaintiffs were likely to succeed on the merits of their constitutional informational privacy claim, because, although the government had articulated legitimate government interests supporting the personal inquiries into the applicant's background, the inquiries were not narrowly tailored.  *Id*. at 881. On March 8, 2010, the United States Supreme Court granted certiorari to address whether the government's actions violated the employee's constitutional right to informational privacy.  *NASA v. Nelson*, 130 S. Ct. 1755; *see also NASA v. Nelson,* 2009 WL 3614469 (Nov. 2, 2009) (Petition for a Writ of Certiorari).

While *Nelson* was pending before the Supreme Court, a different Ninth Circuit panel addressed constitutional right to informational privacy under very different circumstances.  *Seaton v. Mayberg*, 610 F.3d 530 (9th Cir. 2010), concerned a state prisoner, Seaton, serving 31 years for rape and a related kidnapping.  After 16 years of incarceration, "apparently because he was approaching early release, the county sheriff's department had him transferred to a state hospital for evaluation for possible civil commitment" as a "sexually violent predator" under California's Sexually Violent Predator Act.  *Id*. at 532.  Seaton sued several officials and the two psychologists who examined him, arguing that "allowing the psychologists to look at his records and communicate their opinions and supporting data to the district attorney's office" violated his constitutional right to privacy.  *Id*.  The Court of Appeals divided the case into two periods of time: "the first while Seaton was still serving his sentence, the second during any subsequent period necessary for his evaluation."  *Id*. at 534.  As to the first period of time, "[i]mprisonment carries with it the circumscription or loss of many significant rights."  *Id*. at 534.

> Loss of privacy is an inherent incident of confinement. A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We join our sister circuits in holding that prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them. The penological interest in access to whatever medical information there is regarding Seaton is substantial. Prisons need access to prisoners' medical records to protect prison staff and other prisoners from communicable diseases and violence, and to manage rehabilitative efforts.

*Id*. at 534-35 (internal quotations and citations omitted).

The second period of time presented a more difficult question, because, under the circumstances, "[f]or this period, the penological objectives of managing [Seaton's] imprisonment for the safety of prison staff and other prisoners, and rehabilitating him during his imprisonment, have no application." *Id*. at 535-36. The Ninth Circuit then evaluated the relevant Supreme Court authority, noting that the Supreme Court had thus far never acknowledged the existence of a constitutional right to informational privacy:

> We have found only one Supreme Court decision addressing whether the constitution protects medical privacy, *Whalen v. Roe* [429 U.S. 589 (1977)]. The case for privacy was considerably stronger in *Whalen*, because the state law at issue invaded the medical privacy of people who had not been convicted of any crimes, and any prediction of possible criminality did not have a history of past criminality to support the prediction. Under New York law, a physician could not prescribe opiates and other drugs subject to criminal abuse without sending a form to the state giving the name, address and age of the patient. [*Id*. at 593.] About 100,000 such forms per month were collected by the state and the information was stored on computers. [*Id*. at 593-94.] Physicians claimed in the lawsuit that the law deterred them from providing medically desirable prescriptions, and patients that they feared stigmatization as drug addicts, both claiming that the statute invaded constitutionally protected privacy. [*Id*. at 595.]

> The doctors and patients lost their case. The Court distinguished such cases as *Roe v. Wade*, 410 U.S. 113 (1973), limiting government power to regulate "marriage, procreation, contraception, family relationships, and child rearing and education," [*Whalen*, 429 U.S. at 600 n. 26], and held that the compelled disclosure of prescriptions did not "pose a sufficiently grievous threat" to patients' interest in making important medical decisions or keeping them private "to establish a constitutional violation." *Id*. at 600. Though the Court appeared to leave the door open to some sort of constitutional protection of privacy in another case, [*see Nixon v. Administrator of General Services*, 433 U.S. 425, 457 (1977),] it did not hold that there was one. The holding in *Whalen* was

13

1

2   that the New York law did not violate any constitutional rights of the patients whose
prescriptions were revealed to the government. In so holding, the Court acknowledged
3   that some patients might avoid medicine they ought to have, and some physicians might
avoid prescribing it, but said that the New York law did not pose a "sufficiently grievous"
4   threat to these medical concerns to establish a constitutional violation, and the security
provisions of the New York law appeared sufficient to guard against public disclosure.
5   [*Whalen*, 429 U.S. at 600-03.] As for disclosure to the state employees who would
administer the program, the Court characterized it as but one of the "unpleasant invasions
6   of privacy that are associated with many facets of health care," [*id.* at 602,] such as those
disclosures to physicians, hospital personnel, insurance companies and public health
7   agencies. The closest *Whalen* comes to recognizing any constitutional right to privacy of
medical information is its acknowledgment that "the accumulation of vast amounts of
8   personal information" by the government is typically accompanied by a statutory or
regulatory duty to avoid unwarranted disclosures, and that duty "arguably" has some
9   constitutional basis. [*Id.* at 605-06.] Some of our sister circuits recognize a constitutional
right to privacy in medical records, [citations] though the Supreme Court has never so
10  held.

11  *Seaton*, 610 F.3d at 536-37.

12
    *Seaton* then evaluated most of the relevant Ninth Circuit authority:
13

14      We have recognized a constitutional right to the privacy of medical information that
*Whalen* did not, but in contexts different from this case. We held in *Tucson Woman's*
15      *Clinic v. Eden*, [379 F.3d 531 (9th Cir.2004)], that there was such a right, but the context
was burdening of abortion, which Whalen expressly distinguished. *Whalen*, 429 U.S. at
16      600 n. 26]. Arizona required physicians who performed abortions to allow warrantless,
unbounded inspections of their office and access by the state to their patient records.[
17      *Tucson Woman's Clinic*, 379 F.3d at 537.] Physicians also had to send to a state
contractor copies of fetal ultrasounds of subsequently aborted fetuses. [*Id.*] We held that
18      summary judgment was precluded because there was a genuine issue of material fact as
to "whether the scheme creates an undue burden on the right to seek an abortion." [*Id.* at
19      538.] We held in this context that there was "a constitutionally protected interest in
avoiding disclosure of personal matters including medical information" [*id.* at 551] and
20      offered a list of five factors[] to be considered among others to decide "whether the
governmental interest in obtaining information outweighs the individual's privacy
21      interest." [*Id.*] We commented that disclosure of the abortion information to government
employees might violate individuals' rights even without public disclosure.  [*Id.*]  We
22      have held that the constitutional right to medical privacy "is a conditional right which
may be infringed upon a showing of proper governmental interest." [*Ferm v. U.S. Trustee*
23      *(In re Crawford)*, 194 F.3d 954, 959 (9th Cir.1999).] In aid of determining when a proper
governmental interest trumps a right to medical privacy, we stated that the five factors
24      articulated in *Tucson Woman's Clinic* are "not exhaustive, and the relevant considerations
will necessarily vary from case to case.... In most cases, it will be the overall context,
25      rather than the particular item of information, that will dictate the tipping of the scales."
[*Id.*]
26

27

28

14

610 F.3d at 537-38.[2]  *Seaton* concluded that under Ninth Circuit's jurisprudence as of 2010: "It is not entirely clear yet whether the constitutional right we have recognized falls entirely within the class Whalen carves out, for disclosure that burdens 'matters relating to marriage, procreation, contraception, family relationships, and child rearing and education.'"  *Id*. at 538.  *Seaton* acknowledged the broader holding in *Nelson v. NASA*, but refused to follow it, reasoning that "the Supreme Court has granted certiorari in that case so it is not yet final" and because "*Nelson* involved employment applications, not civil commitment."  *Id*. at 539.

In January 2011, the Supreme Court issued a reversal in *Nelson*, finding that the Ninth Circuit had erred in concluding that the pre-employment questionnaires were not narrowly tailored.  In so holding, the Supreme Court "assume[d], without deciding, that the Constitution protects a privacy right of the sort mentioned in *Whalen and Nixon [v. Administrator of General Services*, 433 U.S. 425 (1977)]."  131 S. Ct. 746, 751 (January 19, 2011).  Defendants quote dissenting opinions, which blast this approach:

> By substituting for one real constitutional question (whether there exists a constitutional right to informational privacy) a different constitutional question (whether NASA's background checks would contravene a right to informational privacy if such a right existed), the Court gets to pontificate upon a matter that is none of its business: the appropriate balance between security and privacy. If I am correct that there exists no right to informational privacy, all that discussion is an exercise in judicial maximalism. Better simply to state and apply the law forthrightly than to hold our view of the law in pectore, so that we can inquire into matters beyond our charter, and probably beyond our ken.

> If, on the other hand, the Court believes that there is a constitutional right to informational privacy, then I fail to see the minimalist virtues in delivering a lengthy opinion analyzing that right while coyly noting that the right is "assumed" rather than "decided." Thirty-three years have passed since the Court first suggested that the right may, or may not, exist. It is past time for the Court to abandon this Alfred Hitchcock line of our jurisprudence.

---

[2] Seaton inexplicably fails to discuss some of the cases cited in the Ninth Circuit's *Nelson* decision, including *Norman-Bloodsaw v. Lawrence Berkeley Lab*., 135 F.3d 1260 (9th Cir. 1998), which found the public employer defendant had advanced no government interest that would justify testing present and former employees for certain medical conditions, namely syphilis, sickle cell trait, and pregnancy.  Although *Norman-Bloodsaw* applied Fourth Amendment jurisprudence to analyze the testing, "because it would not make sense to examine the collection of medical information under two different approaches," the Ninth Circuit clearly acknowledges that "[t]he tests at issue in this case thus implicate rights protected under both the Fourth Amendment and the Due Process Clause of the Fifth or Fourteenth Amendments."  *Id*. at 1269.

15

1    *Id*. at 767 (Scalia, J., dissenting).

2         However, for the purposes of a district court sitting in the Ninth Circuit, the relevant inquiry is

3    not only whether the Supreme Court has acknowledged such a right.  In the absence of Supreme Court

4    guidance, this Court must ask whether the <u>Ninth Circuit</u> has articulated such a right.  *Nelson* clearly does

5    so, and the Supreme Court's decision does <u>not</u> reverse on that issue.  However, *Seaton,* decided after

6    *Nelson* and overtly disregarding *Nelson's* holding, suggests that the right to informational privacy is a

7    narrow one, limited only to fundamental rights such as "matters relating to marriage, procreation,

8    contraception, family relationships, and child rearing and education."  610 F.3d at 538.  The Ninth

9    Circuit has not addressed informational privacy since *Seaton*.

10        In Recent months, since the Supreme Court's ruling in *NASA v. Nelson*, district courts have not

11   applied the caselaw in a uniform manner.  For example, *Newman v. Poquette*, 2012 WL 487116 (C.D.

12   Cal. Jan. 12, 2012), refused to dismiss a prisoner's § 1983 informational privacy claim, where the

13   prisoner had "alleged sufficient facts to show that the disclosure of his medical information was

14   unrelated to any legitimate penological interest."  *Id*. at *3-5.  There, the district court relied on *Tucson*

15   *Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 1994), which held that certain provisions in an

16   Arizona regulatory scheme aimed at abortion practitioners violated patients' constitutional right to

17   privacy.  *See* 2012 WL 487116 at *3.  Although *Poquette* cited *Seaton* for another purpose, *Poquette* did

18   not address *Seaton's* suggestion that the Ninth Circuit informational privacy right cases were limited to

19   "matters relating to marriage, procreation, contraception, family relationships, and child rearing and

20   education."  610 F.3d at 538.

21        In another recent district court case, *Titus v. City of Prairie City*, 802 F. Supp. 2d 1210, 1227

22   (July 4, 2011), the plaintiff alleged his right to medical informational privacy was violated when his

23   employer inquired into his use of sick leave to determine whether he was abusing the sick leave system.

24   *Titus* did not even cite *Seaton*.  Instead, *Titus* relied on general language from *In re Crawford*, 194 F.3d

                                                      16

954 (9th Cir. 1999), a case about the disclosure of Social Security Numbers.  *In re Crawford* specifically

found that the informational privacy right extended <u>beyond</u> "fundamental rights":

> While the Supreme Court has expressed uncertainty regarding the precise bounds of the constitutional "zone of privacy," its existence is firmly established. *See, e.g., Whalen v. Roe*, 429 U.S. 589, 599–600 (1977); *Griswold v. Connecticut*, 381 U.S. 479, 483 (1965). We have observed that the relevant Supreme Court precedents delineate at least two distinct kinds of constitutionally-protected privacy interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Doe v. Attorney General*, 941 F.2d 780, 795 (9th Cir. 1991) (quoting *Whalen*, 429 U.S. at 599–600).  [Plaintiff] argues that the disclosure of his SSN implicates the first of the two threads, sometimes referred to as the right of "informational privacy." [citations] [¶] We agree [] that the indiscriminate public disclosure of SSNs, especially when accompanied by names and addresses, may implicate the constitutional right to informational privacy. *** The right to informational privacy, however, "is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Doe* [], 941 F.2d at 796.

*In re Crawford*, 194 F.3d at 958.[3]  Applying *In Re Crawford*, *Titus* refused to grant a municipal

defendant's motion for summary judgment on the privacy claim, reasoning that the *In Re Crawford's*

balancing test required a full airing of the evidence and an opportunity for the finder of fact to make

credibility determinations.  802 F. Supp. 2d at 1227.

   *Olivera v. Vizzusi*, 2011 WL 219592 (E.D. Cal. Jan. 19, 2011), issued the same day as the

Supreme Court's ruling in *NASA v. Nelson*, followed *Seaton's* lead holding that although "the

Constitution protects an individual interest in avoiding disclosure of personal matters.... the courts have

construed this right narrowly, limiting it to those rights which are fundamental or implicit in the concept

of ordered liberty." *Id*. at *4 (internal citations and quotations omitted).   Finally, the district court in

*O'Phelan v. Loy*, 2011 WL 719053 (D. Haw., Feb. 18, 2011), which cited *In re Crawford* instead of

*Seaton*, nevertheless concluded that "Supreme Court and Ninth Circuit authority demonstrates that the

---

[3] *In re Crawford*, decided in 1999, certainly suggests that the Ninth Circuit acknowledges a right to informational privacy that extends beyond "fundamental matters" by acknowledging the right applies to the "disclosure of personal matters.  194 F.3d at 958.  However, more than a decade later in 2010, without discussing this aspect of *In re Crawford*, *Seaton* suggests exactly the opposite by cautioning that "[i]t is not entirely clear yet whether the constitutional right [to informational privacy extends only to] matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." 610 F.3d at 538.  To make matters more confusing, *Nelson*, decided in 2011, follows the approach articulated in *In re Crawford*, but *Nelson* was reversed, albeit on different grounds

constitutional right of informational privacy is murky, at best." *Id*. at *11.

In his sur-reply, Plaintiff completely fails to address the existence of a federal right to privacy that would be sufficient to trigger section 1983 liability.  Plaintiff exhaustively discusses *NASA v. Nelson*, 131 S. Ct. 746, and impliedly acknowledges that the Supreme Court has not articulated a federal constitutional right to privacy.  Rather than discuss any of the relevant Ninth Circuit precedent, Plaintiff suggests "the Court should be guided by the Confidentiality of Medical Information Act, Cal. Civ. C[ode] § 56 et seq. and HIPAA which precludes defendants violation of the Privacy Act and its avoidance of written consent of medical disclosure."  None of these cited provisions can form the basis for a section 1983 claim.

First, California's Confidentiality of Medical Information Act is a <u>state</u> law.  Section 1983 provides a civil action against state actors who violate <u>federal</u> constitutional or <u>federal</u> statutory rights, not state law.  *See* 42 U.S.C. § 1983; *Galen v. City of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007).

Second, an alleged HIPAA violation cannot form the basis for a 1983 claim.  Although section 1983 does on its face apply to both federal constitutional and federal <u>statutory</u> rights, if there is no basis for a private right of action under the particular federal statute, that statute does not create a federal right for purposes of section 1983.  *See Gonzaga University v. Doe*, 536 U.S. 273, 286 (2002).  Because, as has been discussed in previous decisions in this case, HIPAA provides no private right of action, *United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009), it cannot form the basis of a section 1983 claim. *See Garber v. City of Clovis*, 2012 WL 273380, *9 (E.D. Cal. Jan. 30, 2012) (dismissing 1983 claim premised upon HIPAA violation); *Miler v. Elam*, 2011 WL 1549398, *4 (E.D. Cal. Apr. 21, 2011) (same).

Finally, the "Privacy Act" referenced by Plaintiff is presumably the federal Privacy Act of 1974, 5 U.S.C. § 552a, which is discussed in *NASA v. Nelson*, 131 S. Ct. at 752.  That statute applies only to the <u>federal government</u>, not to state or local government agencies such as the defendants in this case.

18

*See* 5 U.S.C. § 552a(a)(1); *Streich*, 560 F.3d at 935.

Plaintiff has, once again, completely ignored applicable authority in an attempt to create a cause of action out of thin air.  The only even plausible basis for a <u>federal</u> claim in this case is a section 1983 claim based upon a federal constitutional right to informational privacy.  Even Plaintiff appears to have abandoned this theory in his sur-reply.  In an abundance of caution, given the repeated previous assertions of a section 1983 claim based upon a constitutional right to informational privacy, the Court will complete the qualified immunity analysis as to that claim.

### (3)    <u>Was the Right Asserted Clearly Established?</u>

The district court in *O'Phelan* persuasively summarizes the state of the law in this Circuit as to the existence of a federal constitutional right to informational privacy: "Supreme Court and Ninth Circuit authority demonstrates that the constitutional right of informational privacy is murky, at best."  2011 WL 719053 at *11.  Accordingly, the second prong of the qualified immunity analysis becomes critical.  *See Pearson*, 555 U.S. 223 (lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").  It is exactly when the confines of a right are "murky" that qualified immunity is meant to shield individual state actors from liability.  *See Titus*, 802 F. Supp. 2d at 1237-38 (granting summary judgment to individual defendants on qualified immunity grounds because "a reasonable official in the individual defendants' circumstances could have believed that their conduct was lawful," despite the fact that "defendants exercised poor judgment regarding the circumstances in which ... private medical information was revealed").  Moreover, "[]f the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered 'clearly established' at least in the absence of closely corresponding factual and legal precedent."  *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989) (quoting *Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir 1987)).

Defendants' motion to dismiss the constitutional informational privacy right claim against the individual defendants on qualified immunity grounds is GRANTED.   The FAC therefore fails to state a federal claim against any individual Defendant.

### 3.     Federal Civil Rights Claims Against the City.

All federal constitutional claims, with the exception of the constitutional informational privacy claim, have been dismissed on the merits.   The constitutional informational privacy claim has been dismissed on qualified immunity grounds as to the individual Defendants.   However, qualified immunity does not apply to municipal Defendants, such as the City.   *Drummond ex rel. Drummond v. City of Anaheim,* 343 F.3d 1052, 1055-56 n.3 (9th Cir. 2003) (citing *Owen v. City of Independence*, 445 U.S. 622, 638 (1980)).   Technically, it is "not impossible for a municipality to be held liable for the actions of lower-level officers who are themselves entitled to qualified immunity." *Joyce v. Town of Tewksbury, Mass.*, 112 F.3d 19, 23 (1st Cir. 1997).   Critically, in the qualified immunity analysis above, the Court does not decide whether a constitutional right to informational privacy applies to the conduct alleged in this case because, regardless, such a right was not clearly established.   For the reasons set forth below, the Court likewise does not need to reach the constitutional issue to decide the City's motion to dismiss.

Defendants move to dismiss all claims against the City on the ground that Plaintiff has yet again failed to satisfy the requirements of *Monell,* 436 U.S. 690-91.   As described in the January 25, 2012 Memorandum Decision:

> *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978), [] provides that a municipality cannot be liable under § 1983 on a *respondeat superior* theory (i.e., simply because it employs someone who deprives another of constitutional rights).   Rather, liability only attaches where the municipality itself causes the constitutional violation through a "policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy." *Id*. at 694.   Therefore, municipal liability in a § 1983 case may be premised upon:  (1) an official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy"; or (4) where "an official with final policy-making authority delegated that authority to, or ratified the

20

1   decision of, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

2   Doc. 16 at 4.

3   In the FAC, Plaintiff has attempted to satisfy *Monell* by alleging a "failure to train" claim.

4   "[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train

5   amounts to deliberate indifference to the rights of persons with whom the police come in contact." *City

6   *of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its

7   

8   employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can

9   such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."

10   *Id.* at 389. "[I]t is therefore difficult in one sense even to accept the submission that someone pursues a

11   'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies

12   

13   resulted from conscious choice-that is, proof that the policymakers deliberately chose a training program

14   which would prove inadequate. And in the second place, some limitation must be placed on establishing

15   municipal liability through policies that are not themselves unconstitutional...." *City of Oklahoma City

16   *v. Tuttle*, 471 U.S. 808, 823 (1985).

17   The U.S. Supreme Court has elaborated on an inadequate training claim:

18   
19   > [I]t may happen that in light of the duties assigned to specific officers or employees the
20   > need for more or different training is so obvious, and the inadequacy so likely to result in
21   > the violation of constitutional rights, that the policymakers of the city can reasonably be
22   > said to have been deliberately indifferent to the need. In that event, the failure to provide
23   > proper training may fairly be said to represent a policy for which the city is responsible,
24   > and for which the city may be held liable if it actually causes injury.

22   > In resolving the issue of a city's liability, the focus must be on adequacy of the training
23   > program in relation to the tasks the particular officers must perform. That a particular
24   > officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city,
25   > for the officer's shortcomings may have resulted from factors other than a faulty training
26   > program.

26   *Harris*, 489 U.S. at 390-91 (footnotes omitted). The Ninth Circuit has explained:

27   > The custom or policy of inaction, however, must be the result of a "conscious," ... or
28   > "deliberate choice to follow a course of action ... made from among various alternatives
   > by the official or officials responsible for establishing final policy with respect to the

21

subject matter in question."

\*\*\*

> A local governmental entity's failure to train its employees can also create § 1983 liability where the failure to train "amounts to deliberate indifference to the rights of persons" with whom those employees are likely to come into contact.... "[F]or liability to attach in this circumstance the identified deficiency in a [local governmental entity's] training program must be closely related to the ultimate injury." ... In other words, a plaintiff must show that his or her constitutional "injury would have been avoided" had the governmental entity properly trained its employees....

*Lee v. City of Los Angeles,* 250 F.3d 668, 681 (9th Cir. 2001) (citations omitted).

A section 1983 plaintiff alleging a policy of failure to train peace officers must show: (1) he/she was deprived of a constitutional right; (2) the local government entity had a training policy that amounts to deliberate indifference to constitutional rights of persons' with whom its peace officers are likely to come into contact; and (3) his/her constitutional injury would have been avoided had the local government unit properly trained those officers.  *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007).  "[A]bsent evidence of a program-wide inadequacy in training, any shortfall in a single officer's training can only be classified as negligence on the part of the municipal defendant-a much lower standard of fault than deliberate indifference."  *Id*. at 484-85 (internal citations and quotations omitted). In short, "the identified deficiency in a city's training program must be closely related to the ultimate injury."  *Harris,* 489 U.S. at 391.

Critically, the required "deliberate indifference" is established where " 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.' "  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (quoting *City of Canton*, 489 U.S. at 390).  Several district courts have held, that "to be 'deliberately indifferent' to rights requires that those rights be clearly established."  *Watson v. Sexton*, 755 F. Supp. 583, 588 (S.D.N.Y. 1991) (dismissing failure to train claim based upon employer's collection of urine specimens as part of a physical examination to determine fitness for employment because it was not yet clearly established that

22

the collection was a fourth amendment search); *Williamson v. City of Virginia Beach*, 786 F. Supp. 1238, 1264-65 (E.D. Va. 1992) ("[Even if] the constitutional rights alleged by plaintiff did exist, the conclusion that they were not clearly established negates the proposition that the city acted with deliberate indifference"), aff'd, 991 F.2d 793 (4th Cir. 1993); *Zwalesky v. Manistee County*, 749 F. Supp. 815, 820 (W.D. Mich. 1990) ("[I]t would be irrational to hold that a municipality has shown a deliberate indifference to the rights of its citizens by failing to train its personnel when its officers have violated no clearly established right."); *see also Briley v. City of Hermosa Beach*, 2008 WL 4443854, *7 (C.D. Cal. Sept. 29, 2008) (granting summary judgment on failure to train claim based upon act that did not violate a clearly established right because such an act "does not constitute deliberate indifference"). This is the only logical conclusion in a failure to train case. How can a municipality be expected to train officers to avoid violating a right the outlines of which cannot be reasonably be discerned from existing precedent?

Accordingly, Defendants' motion to dismiss the federal civil rights claims against the City is GRANTED.

The FAC once again fails to state any federal claim. Plaintiff has not requested and will not be afforded an additional opportunity to amend. The claims in this case do not even suggest the possibility that a non-frivolous federal claim could be stated.

## C.   State Law Claims

Where all federal claims are dismissed in an action containing both federal and state law claims, a federal court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *Notrica v. Bd. of Sup'rs of County of San Diego*, 925 F.2d 1211, 1213-14 (9th Cir. 1991). The Court is not required to provide an explanation for its decision. *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001). Accordingly, this Court declines to exercise supplemental jurisdiction over the remaining state law claims.

# V. CONCLUSION AND ORDER

For the reasons set forth above, Defendants' motion to dismiss is GRANTED as to all the federal claims in the FAC WITHOUT LEAVE TO AMEND and WITH PREJUDICE.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.  The Clerk of Court is directed to enter judgment for Defendant and against Plaintiff on the federal claims and to close this case.


**SO ORDERED**
**Dated:  April 19, 2012**

                                                                    **/s/ Lawrence J. O'Neill**
                                                              **United States District Judge**